Joseph A. Suozzi, J.
In this action tried by the court without a jury, the plaintiffs pray for a judgment (1) declaring null and void an amendment of the Building Zone Ordinance of the Town of Oyster Bay on May 14,1963, wherein the zoning classification of property owned by the defendants Jack, Scott and Arthur Skodnek was changed from Residence “ D ” to Industrial “H”, and (2) enjoining the defendants Skodnek from using the premises for industrial or business purposes in accordance with the aforesaid amendment.
The complaint alleges that the enactment of the amendment was not made in accordance with the provisions of article 16 of the Town Law. In particular it is alleged: (1) that the plaintiffs are aggrieved because their adjacent or abutting residential property will depreciate in value by reason of this amendment, thereby inflicting hardships and losses upon them; (2) that notice of the hearing was not published in a paper of general circulation in the town; (3) that the proposed change was not submitted to a planning board; (4) that the amendment is illegal because it is conditional; (5) that the amendment was for the benefit of the Skodneks and not for the welfare of the community, and therefore a ease of spot zoning; and (6) that the owners will be especially benefitted by the permission to bring the property to the grade of Brush Hollow Road contrary to other ordinances enacted for the protection of the plaintiffs pertaining to “ sand mining
Briefly stated the evidence shows: that the Skodneks are the owners of approximately 14 acres of vacant land on the northwest side of Brush Hollow Road in the Jericho section of the Town of Oyster Bay; that this land was retained in a residential district by the zoning ordinance adopted on March 31, 1959; that on the same side of Brush Hollow Road all land is zoned residential with the exception of a nonconforming gasoline station in the middle of the subject property, and land on its northeasterly boundary which is zoned Business “ F ”; that directly across Brush Hollow Road the land is zoned for industrial uses and there is in existence an industrial park; that the subject property was zoned residential when it was purchased by the Skodneks in 1961 or 1962; that a contract to sell to Silicon Transistor Corporation (the intervening plaintiff) for $55,000 an *108 acre was made in February, 1963, upon the condition that the property be rezoned for industrial use prior to August 15,1963; that a petition for a change in zone was submitted on April 9, 1963, after publication of a notice in the Centre Island News on March 29, 1963 of the hearing on the proposed change; that on May 14, 1963, the amendment was made changing the use to Industrial “ÉL”; that this amendment provided in part as follows : 1 ‘ Provided, however, the granting of the aforesaid application is contingent upon full compliance in all respects ” with certain specified terms and conditions, including one providing that the grade of the entire parcel be brought down to the grade of Brush Hollow Road in accordance with the Town Engineer’s approval of grades and specifications.
The plaintiffs have commenced this action on the ground that their property values would be substantially depreciated as a result of the proposed industrialization of the subject property. It was the firm opinion of one expert witness called by the plaintiffs (Kristian) that-the value of their houses would depreciate from four to five thousand dollars due to the proximity to the proposed industrial park. Two witnesses for the defendants disputed this, and claimed there would not result any repreciation in house values. The court is not convinced that the evidence demonstrates that the financial depreciation will be as substantial as the plaintiffs claim. There may be some depreciation, but not in such a substantial amount as would permit this court to rest a judgment of invalidity of this amendment thereon.
Consideration, however, must be given not only to financial depreciation, but the depreciation in the enjoyment of one’s property rights, which concededly may be psychological and so intangible as to evade tangible evidentiary demonstration. While the court cannot find from the evidence before it that the industrial uses will render the plaintiffs’ properties undesirable for residential purposes, they certainly will be less desirable than they are now. On such a showing the plaintiffs’ right to maintain this action is sufficiently established in this court’s opinion (Westchester Motels v. Village of Elmsford, 20 A D 2d 818; Rice v. Van Vranken, 132 Misc. 82, affd. 225 App. Div. 179, affd. 255 N. Y. 541).
In urging the failure of the town to publish the notice of public hearing in a paper of “ general circulation ”, the plaintiffs have offered extensive proof to demonstrate the limited circulation of the newspaper which carried the notice. The legislative enactments which require public notices to be published do not *109 define the term “ general circulation The courts have not defined it any more precisely, except to state that the notice should be circulated with the widest publicity (People ex rel. Guernsey v. Somers, 153 App. Div. 623, affd. 208 N. Y. 621). However, a finding that the paper involved is or is not one of “ general circulation ” is not materially significant here to the court’s conclusion. The court finds that the plaintiffs did have notice and cannot claim to be aggrieved by a claim of inadequate notice. (North Shore Beach Property Owners Assn. v. Town of Brookhaven, 115 N. Y. S. 2d 670.) The plaintiffs were given and actually had “ the opportunity to be heard”, and were heard.
There is no dispute that the Town of Oyster Bay appointed a Zoning Commission as provided by section 266 of the Town Law “ to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein ’ ’. This was done at the time of the adoption of the original zoning ordinance in 1929. The commission was discharged and disbanded shortly thereafter. The town has not appointed nor made any pretense of appointing one in connection with the 1959 ordinance. The town claims that this was not an original zoning ordinance which within the purview of section 266 mandates the appointment of a commission, but was instead an amendment or revision of the 1929 ordinance. The title of the ordinance sustains this claim.
Section 274 of the Town Law provides that the Town Board may refer zoning matters, including zoning amendments, to the Planning Board by general or special rule (Paliotto v. Town of Islip, 31 Misc 2d 447). The town has not passed such a rule nor for that matter ever appointed a Planning Board, which is authorized but not required by section 271. (Place v. Hack, 34 Misc 2d 777; Matter of Leone v. Brewer, 259 N. Y. 386.) So that any claim of invalidity predicated on these facts need not detain us any longer.
The resolution changing the zoning of the Skodnek property provides as follows: ‘ * Provided, however, that the granting of the aforesaid application is contingent upon full compliance in all respects” with the following terms and conditions; four conditions are then stated. One of these conditions provides: “ 2) That the grade of the entire parcel shall be brought down to approximately the grade of Brush Hollow Road in accordance with the grades and specifications to be approved by the Town Engineer.”
The testimony discloses that the grade of Brush Hollow Road is 15 to 18 feet lower than the present elevation of the subject *110 property. This means that over 300,000 cubic yards of soil material will have to be excavated and removed. The plaintiffs contend that this zoning amendment is invalid because of the conditions imposed. The town and the owners, on the other hand, claim that the right of the town to impose conditions has been firmly established by the Court of Appeals in Church v. Town of Islip (6 Misc 2d 810, revd. 8 A D 2d 962, affd. 8 N Y 2d 254) where Chief Judge Desmond of the Court of Appeals said (p. 259): “ Since the Town Board could have, presumably, zoned this Bay Shore Road corner for business without any restrictions, we fail to see how reasonable conditions invalidate the legislation ’ ’, particularly where the conditions were intended to be and are for the benefit of the neighbors.
While the town could have made the change here without the conditions, whether they would have is another matter. It is not clear whether their conditions were entirely for the benefit of the neighbors. However, it is unnecessary to pass on what the town could presumably do, and why they did what they did. It is sufficient to pass on what they did do, to wit, pass a resolution which does not, in the court’s view, grant the change of zoning from residential to industrial until certain conditions are performed. This resolution purports to change the zoning in futuro, which was not the case in Church v. Town of Islip (supra). There the change of zone was granted and immediately effective. The conditions imposed there were to be performed before £1 carrying out any retail business on the property ”, and not before the zoning was changed, as in this case. The doctrine of 1 £ conditional zoning ’ ’ as stated in the Church case may not be extended to this situation. Here compliance with all the conditions does not depend solely on the good faith and the willingness or the ability to perform them as in the Church case. Compliance with the condition as to grading to street level will in the final analysis depend on whether the owners will be permitted to comply. The fact that permission to do the necessary excavation and removal of material must come from the same offieal body, to wit, the Town Board, that purported to grant the change of zone is no assurance or guarantee that it will be forthcoming. As the court interprets the Town’s ££ Ordinance Relating to Excavation & Removal of Topsoil, Sand, G-ravel & Other Earthen Materials ”, the operation involved in the excavation and removal of material on the subject property is not one of the exceptions listed in section 2 which are exempted from obtaining a permit. Here a permit must be obtained following a public hearing had after public notice.
*111 Excerpts from the examination before trial of one of the owners, Jack Skodnek, reveal that it was the owners who requested the change in grade, and not the town. This is certainly a clearer instance of zoning by contract than was evident in the Church case. The underlying principle for shunning this kind of zoning has been very simply stated in an article entitled, “Zoning by Contract with Property Owner ” by Ralph W. Crolly and C. McKim Norton which appeared in the New York Law Journal of April 6, 1955, in the following language:
“A municipality has no power to make any agreement or deal which will in any way control or embarrass its legislative powers and duties. Neither the police power of the State itself nor that delegated by it to a municipality is subject to limitation by private contract; nor is the exercise of such power to be alienated, surrendered or limited by any agreement or device.
‘ ‘ Zoning of properties by a municipality, being legislative in character, cannot be bargained or sold. The rezoning of a parcel of property by a municipality based in any way upon an offer or agreement by an owner of property is inconsistent with, and disruptive of, a comprehensive zoning plan.”
The court finds that the resolution changing the zone of the subject property from residential to industrial was ineffective because it purports to change zoning in the future. Therefore the amendment is declared invalid.
The zoning change has also been attacked as not being ‘ ‘ in accordance with a comprehensive plan ” and for the benefit of the community, but rather for the benefit of the owner. If such be the case, it would be illegal as spot zoning. In view of the court’s ruling, it is unnecessary to pass on these questions. However, the importance of the questions involved requires some comment.
In 1959 the town adopted its ‘ ‘ comprehensive zoning plan ’ ’, which in its totality consists of the zoning ordinance and maps. This was adopted after months of studies and consultations, all of which appear to have been orally communicated to the town’s officials by the town’s planning expert, who testified here. At that time, even though the subject property was considered for industrial zoning, it was retained as residential because at the time there appeared to be sufficient other land then available for the industrial needs of the town. It was thought then that Brush Hollow Road was “ a good place to end industry ”. By reason of a recent court decision (Opgal, Inc. v. Burns, 20 Misc 2d 803, affd. 10 A D 2d 977, affd. 9 N Y 2d 659) and the use of available vacant land zoned industrial, a reduction of property suitable for industrial uses resulted. It was therefore reason *112 able and proper to rezone this property, according to the town and its expert, to fill the industrial need — present and in the future.
Mr. Justice Meyer, of this court in Udell v. McFadyen (40 Misc 2d 265), after discussing what the phrase “ in accordance with a comprehensive plan” may be understood to mean, suggests that the New York cases have interpreted it to refer to internally consistent zoning based on a rational underlying policy.
If it is the town’s underlying policy to rezone to industry to meet the need for industrial land, the town’s confidence in its rationality would be best demonstrated by its taking the initiative to fill the void, rather than by awaiting owners’ positions, as was the case here and in all but two instances where changes to industrial have been effected since the adoption of the comprehensive zoning plan in 1959. The rationality of the policy, as well as the internal consistency of the zoning, would have dictated a similar change at least for the parcel in the midst of the subject property presently occupied as a gas station as a nonconforming use, if not for the additional five acres which are zoned commercial and abut the subject property on the northeast. If a particular zoning amendment benefits only the owner of the property affected, the amendment is ‘1 .spot zoning ’ ’ whether there is or is not a comprehensive plan. (Buckley v. Fasbender, 1 N Y 2d 681.) On the other hand, “ The fact that a single parcel was involved in the ordinance under review does not mean that the ordinance was not enacted in accordance with a comprehensive plan” (Zeitler v. Incorporated Vil. of Farmingdale, 8 A D 2d 946, 947).
Section 261 empowers a town to enact zoning regulations which by virtue of section 263 must be “in accordance with a comprehensive plan”. The town’s zoning expert, replying to a direct question as to what constitutes a comprehensive plan, described it as follows: 1 ‘ The plan itself is the map you see, is the ordinance that must be analyzed in conjunction with the map, and it is something which anybody looking at it would have to determine as to whether there is mutual consistency in what has been put on that map in terms of whether there is a reasonable direction that the community takes. In other words, a community has shown its hand as to what it believes a reasonable direction of the various uses of land is.”
The following excerpts of his testimony leave no doubt as to this definition of the town’s comprehensive plan:
“Q. Is it your testimony, then, that the comprehensive plan as you understand it is that plan as represented by the zoning *113 map and by the zoning ordinance? A. In essence, that is what it is.
“ Q. Either it is or it is not. A. It is.
“ Q. Are there any other elements to it other than the map and the zoning ordinance? A. I don’t think so.”
Thus in the town’s view, as expressed by its zoning expert, its “ comprehensive zoning plan” is synonymous with “ comprehensive plan ’ ’. The plaintiffs ’ planning expert and the Chief Planner for the Nassau County Planning Commission disagreed completely, maintaining that the zoning plan was merely a means or tool for effectuating the comprehensive plan. The town’s claim serves only to make the riddle of the “ comprehensive plan ” that much more puzzling. To say that the town’s “ comprehensive zoning plan ” is interchangeable with “ comprehensive plan ” is to say that zoning regulations adopted pursuant to section 261 (which constitute the ‘ ‘ comprehensive zoning plan ”) must be in “ accordance ” with themselves. This court cannot believe that the Legislature intended or contemplated such a meaningless interpretation of these provisions.
While a comprehensive plan need not be in writing (Place v. Hack, 34 Misc 2d 777, supra), it should at least be amenable to statement when proper inquiry is made of those informed in such matters. If it is to be presumed to exist in the mind of the Town Board, then of necessity the plan must bear the imprint of the varying ideas and peculiar experiences of the individual members which may be subject to change from time to time, as are the members of the board themselves. It is doubtful that the Legislature intended that it should be that elusive. Under the circumstances, however, as has previously been pointed out, it is unnecessary to brand the purported change as spot zoning or to conclude that it is not in accordance with a comprehensive plan.
Judgment for the relief demanded in the complaint is granted.