BEACON SYRACUSE ASSOCIATES,
Plaintiff,

v.

The CITY OF SYRACUSE, Syracuse Urban Renewal Agency, New York State Urban Development Corporation, Syracuse City Planning Commission, Common Council of the City of Syracuse, Syracuse Renaissance Partners, Ltd., and Syr Mall Corporation, Defendants.

No. 82–CV–663.

United States District Court,
N.D. New York.

Jan. 7, 1983.

Hiscock, Lee, Rogers, Henley & Barclay, Syracuse, N.Y., Guterman, Horvitz, Rubin & Rudman, Boston, Mass., for plaintiff; Ferdinand L. Picardi, Syracuse, N.Y., of counsel.

Corp. Counsel, City of Syracuse, Syracuse, N.Y., for defendants City of Syracuse, Syracuse Urban Renewal Agency, Syracuse City Planning Commission, and Common Council of the City of Syracuse; James L. Gelormini, Syracuse, N.Y., of counsel.

Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N.Y., for defendant New York State Urban Development Corp.; Hamilton S. White, Syracuse, N.Y., of counsel.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N.Y., Attorneys for defendant Syracuse Renaissance Partners, Ltd.; Nancy L. Pontius, Syracuse, N.Y., of counsel.

Scolaro, Shulman & Cohen, P.C., Syracuse, N.Y., Quint, Marx, Chill & Greene, New York City, for defendant Syr Mall Corp.; Walter D. Kogut, Syracuse, N.Y., C. Daniel Chill, New York City, of counsel.

MEMORANDUM–DECISION
AND ORDER

MUNSON, Chief Judge.

I.

Beacon Syracuse Associates (Beacon), a limited partnership organized under the laws of the Commonwealth of Massachusetts, is the redeveloper and present owner of real property known as Block 107 in the City of Syracuse.

The defendants are the City of Syracuse (Syracuse), a municipal corporation; Syracuse Urban Renewal Agency (SURA), a public benefit corporation of the State of New York; New York State Urban Development Corporation (UDC), a corporate governmental agency of the State of New York; the Syracuse City Planning Commission (Commission), a governmental commission; the Common Council of the City of Syracuse (Council), a legislative and quasi-judicial body of the City of Syracuse, Syracuse Renaissance Partners, Ltd. (Renaissance), a limited partnership and Syr Mall Corporation (Syr Mall), a New York corporation. Renaissance and Syr Mall, joint venturers, are the current redevelopers and present owners of the real property known as Block 100 in the City of Syracuse, such property being the subject of this lawsuit.

The gravamen of Beacon's complaint is that the use of the structure on Block 100, predominantly as an office complex, is violative of its constitutional and statutory rights and will cause Beacon substantial financial harm.

More specifically and relevant to the motions presently before this Court, plaintiff asserts four claims against UDC under Title 42 United States Code, Section 1983: deprivation of property without due process; violation of equal protection; impairment of contract and condemnation of property without due process. Second, Beacon alleges a Title 42 United States Code, Section 1985, conspiracy violation against UDC, Syr Mall and Renaissance. Finally, Beacon asserts state law claims of breach of contract against UDC, Syr Mall and Renaissance and intentional interference with a contract

against Syr Mall and Renaissance. The plaintiff seeks declaratory, injunctive and monetary relief. Jurisdiction is alleged under Title 28 United States Code, Sections 1331, 1332 and 1343. In addition, the plaintiff maintains that this Court has pendent jurisdiction over the state claims.

Presently before this Court are motions by defendant UDC to dismiss the complaint for lack of jurisdiction and for failure to state a claim; by defendant Renaissance to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment; and by Syr Mall to dismiss the complaint for lack of jurisdiction and for failure to state a claim or, in the alternative, for summary judgment. An apercu of the facts leading up to this lawsuit is in order.

II.

In the late 1960's, the City of Syracuse, acknowledging the gradual deterioration of the downtown region, undertook a comprehensive urban renewal program, the main objective of which was "to stimulate through the public actions and commitments . . ., private investment in redevelopment and rehabilitation in the City's central business area." Urban Renewal Plan § 101. As a consequence of that program, the Syracuse Common Council adopted the Clinton Square Urban Renewal Plan (URP) in July of 1968.

The specific objectives of the URP include elimination of incompatible land use relationships; provision for the orderly growth of downtown; provision of a strong northern anchor of retail, office and other commercial development and establishment of a functional pattern of land use relationships. URP § 102.

In addition to these general objectives, the URP provides more specific development objectives and land use provisions for distinct blocks encompassed by the URP. Relevant here, the primary objective of Blocks 100 and 107 under the original URP was "to provide for new major retail and office development including a major de-

partment store, office banking facilities and small retail shops to form a strong northern anchor to the retail core." URP § 303.-2(h)(1). In furtherance of this objective, the Land Use Plan of the URP designated Block 107 as "Office and Service" and Block 100 as "C.B.D. Retail District."

In order to implement the URP, Blocks 100 and 107 were acquired by SURA from the Department of Housing and Urban Development (HUD). SURA in turn entered into a contract with UDC (SURA–UDC contract) for the sale and redevelopment of these properties. Relevant to this lawsuit, UDC then entered into a contract with Beacon (UDC-Beacon contract) for the sale and redevelopment of Block 107, with Beacon obtaining title to the property by deed dated October 30, 1970, and recorded in Liber 2439 of Deeds at page 283. Block 107 was developed by Beacon as a banking facility and major office complex.

The UDC retained title to Block 100 and developed it to provide the retail core, including Edwards, a large department store. Edwards fell victim to severe financial hardship and was later replaced by several small retail shops, being known as Syracuse Mall. That effort was also unsuccessful.

In July, 1980, the Syracuse City Planning Commission, at the request of UDC, passed a resolution to change the zone for Block 100 from "C.B.D. Retail District" to "Office and Service," ostensibly to accommodate use of part of the Syracuse Mall as a facility for a radio station. The amendment was subsequently adopted, approved and passed by the Common Council, the Mayor and SURA, respectively.

In August, 1981, the URP was once again amended, this time to change the development objective covering Lots 100 and 107. The new objective of Lots 100 and 107 was "to provide sites for new retail and office development to form a strong northern anchor to the downtown area" URP § 303(2)(h)(1). Beacon complains that it was not provided notice of the plan changes nor was its consent obtained, all in violation of the terms of the URP, various contracts, and Beacon's constitutional rights.

On November 9, 1981, Block 100 was sold by UDC to Renaissance and Syr Mall, as joint venturers. Renovation of the Syracuse Mall building to provide predominantly office facilities was commenced in January, 1982. Completion of the renovation and initial occupancy were scheduled for November, 1982. At present the building remains vacant save for occupancy by the radio station.

At issue in this lawsuit is whether the use of the building on Lot 100, known as the Atrium (formerly Syracuse Mall), predominantly as an office complex, is constitutionally and statutorily permissible.

### III.

◼ Addressing first, the defendants' motions to dismiss for lack of jurisdiction. Beacon has alleged jurisdiction under Title 28 United States Code, Sections 1331, 1332 and 1343. While the defendants concede jurisdiction under Title 28 United States Code, Section 1331, this Court finds that jurisdiction is also proper under Title 28 United States Code, Sections 1332 and 1343.

The plaintiff is a citizen of Massachusetts while no defendant is a citizen of that state. Moreover, Beacon has alleged a matter in controversy, the value of which it asserts is in excess of $10,000. Insofar as a claim must not be dismissed for lack of jurisdiction unless it appears to a "legal certainty" that the amount in controversy is less than the jurisdictional amount, *St. Paul Mercury Indemnity Co. v. Red-Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1937), this Court finds that jurisdiction is proper under the diversity statute.

Jurisdiction, likewise, is proper under Title 28 United States Code, Section 1343, since plaintiff's claims have sufficient substance to satisfy the very minimal standards of merit which must be met in order to confer jurisdiction upon this Court pursuant to that statute. *See Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Finally, in that this Court has diversity jurisdiction as to all claims, it need not address the issue of pendent jurisdiction.

## IV.

Beacon's first claim against UDC and other defendants not joining in the motions presently before the Court is that Beacon has been deprived of property without due process of law. Complaint ¶ 53. In essence, Beacon alleges that it acquired a vested property right in the proper implementation and realization of the URP according to its terms and that the proper implementation of the URP required that Beacon consent to any modifications of the URP. Beacon further alleges that the deprivation of this right occurred when the URP was purportedly amended without Beacon's consent and subsequently, when development of the building on Block 100 as a major office complex began.

Underlying this claim is the assumption that prior to the amendments of the URP, the building on Block 100 could not have been developed as an office complex. In this regard, plaintiff relies on the designation of Block 100 as "C.B.D. Retail," the development objectives of the URP and the fact that the URP was amended prior to the sale of Block 100 to Syr Mall and Renaissance.

Block 100 was originally designated on the Land Use Plan of the URP as "C.B.D. Retail." The URP states the general proposition that permitted uses of "C.B.D. Retail" property include: "those retail uses which serve the metropolitan and regional market by virtue of their variety, quality, or specialization of merchandise, and those activities and services which serve the daily convenience needs of employees and shoppers ...." § 302.1 URP.

More specifically, the URP states that property so designated may provide retail trade, services and offstreet parking. These are defined as follows:

(1) *Retail Trade.* Food, drugs, and liquor dealers; eating and drinking establishments; general merchandise retailers; apparel and accessories retailers; furniture; furnishings, and appliance stores; hardware stores; vehicle accessories stores; art dealers; antique dealers; book stores; stationary and art suppliers; sporting good stores; mail-order houses; toy and hobby shops; camera and photographic supply dealers; optical goods stores; cigar stores; news dealers; gift, novelty souvenir stores; and other compatible retail uses.

(2) *Services.* Administrative office headquarters; finance, insurance, and real estate services; business services; professional services; photographic studios; beauty and barber shops; shoe repair shops; instructional services; hotels and residential hotels; theaters; travel bureaus; and other compatible service uses.

(3) *Offstreet Parking.* Subject to the conditions specified in paragraph e. of this section.

URP § 302.1(a)(1). This list of permitted uses, plaintiff maintains, clearly demonstrates that Block 100, designated "C.B.D. Retail," was to provide, in the main, a retail establishment.

Plaintiff further supports this conclusion by reference to the development objective of Blocks 100 and 107 set forth in the original URP. In pertinent part it provides:

(1) the primary objective is to provide sites for new major retail and office development including a major department store, office banking facilities and small retail shops to form a strong northern anchor to the retail core.

(2) Blocks 100 and 107 are to provide a site for a large department store, a major supporting office facility including main office banking facilities and small retail shops that would provide: a strong anchor and focus to the northern edge of the retail core ....

URP § 303.2(h).

This, plaintiff asserts, demonstrates that the drafters of the URP contemplated the harmonious and complementary development of an office banking facility and a major retail outlet on these blocks. Accordingly, since Block 107 was designated "Office and Service" and was developed as an office and banking facility, plaintiff maintains that Block 100, originally designated "C.B.D. Retail," was to provide the retail component.

Defendants, on the other hand, argue that the permissible uses provision of the Land Use Plan and the development objective were only guidelines and that, in any event, because "C.B.D. Retail" use category includes "Services," development of the building on Lot 100 as an office complex is permissible under both the original and amended URP.

The defendant's argument is neither persuasive nor tenable. Certainly, the defendants cannot expect this Court to find that "C.B.D. Retail" is no different from "Office and Service." Both the development objective and the Land Use Plan of the original URP clearly did not contemplate the development of Block 100 as an office complex. Under the terms of the original URP, Block 100 was to be used primarily as a retail establishment and any offices or services were to be ancillary to that retail core.

The fact that Block 100 was redesignated as "Office and Service" and the development objective was amended to delete the retail emphasis prior to the sale of that block to Syr Mall and Renaissance is further support of this conclusion, notwithstanding the defendants' contention that the property was reclassified solely to permit use of the facility as a home for a radio station. Accordingly, this Court proceeds with a discussion of the merits of Beacon's due process claim.

■ Beacon maintains that it was deprived of property without due process of law. In determining any due process claim, the Court employs a two-step analysis: first, the Court ascertains whether that which the plaintiff claims he was deprived of amounts to a property interest entitled to due process protection, and second, the Court determines the nature of the process due. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ Thus, the first issue is whether Beacon was deprived of a "property interest." Property interests may take many forms. Indeed, property protected by the Fourteenth Amendment is potentially all-em-bracing. However, it is also true that "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Goss v. Lopez,* 419 U.S. 565, 572–73, 95 S.Ct. 729, 735–736, 42 L.Ed.2d 725 (1975).

■ Persons derive "claims of entitlement" not by the Constitution, rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. A mere subjective expectancy is not enough. *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).

In the case *sub judice,* it is difficult to precisely determine the source or nature of the property interest claimed by the plaintiff. It appears that Beacon relies on an understanding between the parties. Specifically, Beacon maintains that it made an investment decision with respect to Block 107 based upon an understanding between it and UDC that a common scheme for development was to be assured by the URP; that a specific and enforceable right in the nature of a covenant running with the land would bind all future redevelopers to devote the land to the uses specified in the URP; and finally, that the URP could not be amended without Beacon's consent.

In essence, then, Beacon asserts that the land use designations and the consent provision were elevated to a property right when they were used by the government to induce redevelopers to invest in the properties.

Defendants reject this argument stating that the URP and contracts set forth mere zoning and land use provisions, not amounting to property rights, and that Beacon's consent to the zoning and URP amend-

ments was not required. In essence, defendants maintain that there was no deprivation of an interest because there was no interest entitled to due process protection. For the reasons set forth below, the Court agrees. Neither the consent provision, the land use designation nor Beacon's investment-backed expectation amount to a property right protected by the Fourteenth Amendment.

The original URP designated Block 100 as "C.B.D. Retail." In addition, the URP provided a means by which use designations could be altered. The disputed portion of that provision states:

> In the event that any land has been disposed of for redevelopment within the above identified Project Area, *all affected Redevelopers* shall be duly notified of such proposed change and written consent to said change must be obtained from said Redevelopers prior to approval thereof by the Syracuse Common Council and the Agency (SURA).

URP § 601 (emphasis added).

Beacon maintains that it is an "affected Redeveloper" with respect to the amendment to the URP affecting Block 100. Thus, that it was entitled to have prior notice of any proposed changes in the URP that might "affect" its property and that its consent to such changes would be required before the changes were implemented. Beacon asserts that the amendments which changed the zoning and development objectives of Block 100 to permit development of an office complex "affect" its property because of an alleged threat to its investment caused by the development of a competing office facility.

The defendants, on the other hand, maintain that the term "affected Redeveloper" cannot be interpreted to include Beacon with respect to those amendments. Instead, they state, that an "affected Redeveloper" is one whose recognized constitutionally protected property right, in *its own property,* will be affected by the amendments.

Clearly, the meaning of this term presents a question of fact. "Where con-

tractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment would be improper." *Aetna Casualty Co. v. Giesow,* 412 F.2d 468, 471 (2d Cir.1969); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir. 1980). Accordingly, were the outcome of this claim to turn on the meaning of this term, summary judgment would be improper. However, in that section 601 of the URP does not create a property interest in Beacon, it is of no consequence to this claim whether Beacon is an "affected Redeveloper" with respect to these amendments.

■ It is clear that there is no property interest in a procedure itself. *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118, 1128 (W.D.Penn.1980); *Molgaard v. Town of Caledonia,* 527 F.Supp. 1073 (E.D.Wisc.1981). Thus, in each due process case there must be a separate benefit (the property or liberty interest) and a separate procedure (the delineated process due). *Three Rivers Cablevision, Inc.,* 502 F.Supp. at 1128.

To the extent that Beacon is pleading the deprivation of a property interest as a result of the defendant's failure to conform with the notice and consent provisions of the URP, Beacon's property interest and the process due are one and the same, for the process they seek is adherence to the notice and consent provisions. *See Three Rivers Cablevision, Inc.,* 502 F.Supp. at 1128. *See also Molgaard,* 527 F.Supp. at 1073. This does not satisfy the need for a separate benefit and separate procedure. Accordingly, if Beacon has a protected interest here, it is to be found in the benefit whose enjoyment is sought to be regulated by the procedure. *See Three Rivers Cablevision, Inc.,* 502 F.Supp. at 1129. Here, that would be in the use of Block 100 as a retail establishment or in Beacon's alleged investment-backed expectation.

Beacon maintains that the URP created and assured a common scheme of development to participating redevelopers by virtue of a covenant in the SURA–UDC and

UDC-redeveloper deeds and contracts requiring the redevelopers to use the land in accordance with the manner designated by the URP. This covenant was to run with the land.

■ Under New York law, when an owner of a large tract of land divides it into lots to be sold to different purchasers by deeds containing uniform covenants restricting the use which the grantees may make of their premises, the covenants are enforceable by any grantee as against any other. 4A Warren's Weed, New York Law of Real Property, Restrictive Covenants § 19.08; *Steinman v. Silverman,* 14 N.Y.2d 243, 251 N.Y.S.2d 1, 200 N.E.2d 192 (1964); *Bristol v. Woodward,* 251 N.Y. 275, 167 N.E. 441 (1929); *Gordon v. Incorporated Village of Lawrence,* 84 A.D.2d 558, 443 N.Y.S.2d 415 (2nd Dep't.1981).

Beacon attempts to equate the URP with such a common scheme of development and maintains that, as a grantee of SURA and UDC under the alleged common scheme, it gained the ability to enforce the terms of that scheme against other subsequent grantees of SURA and UDC. This Court disagrees. The URP neither creates a common scheme of development nor gives Beacon power to enforce its land use provisions.

First, while the URP establishes a scheme of development, it is clear that it does not create a *common* scheme of development. Covenants establishing a common scheme of development apply like restrictions to each parcel within the scheme. Restrictions typically imposed include restrictions against commercial use, multiple family dwellings or offensive trades, or they might impose a uniform set back line.

The URP, on the other hand, imposes no common land use requirement. Indeed, the blocks within the Clinton Square Urban Renewal Project are individually zoned and each has its own development objective. Consequently, nothing is common about the scheme of development established by the URP.

■ Second, when covenants restricting land use are imposed pursuant to a common scheme of development, they exist specifically for the mutual benefit and protection of the grantees of that scheme. In that event, all grantees under the scheme are deemed beneficiaries of, and entitled to enforcement of the covenants against all other grantees. *Steinmann v. Silverman,* 14 N.Y.2d 243, 251 N.Y.S.2d 1, 200 N.E.2d 192 (1964); *Bristol v. Woodward,* 251 N.Y. 275, 167 N.E. 441 (1929); *Gordon v. Incorporated Village of Lawrence,* 84 A.D.2d 558, 443 N.Y.S.2d 415 (2d Dep't 1981). Such is not the case here.

■ Both the Urban Renewal Law (URL) and the URP were promulgated for the benefit of the public. The purpose of the URL is "to protect the safety, health, morals and welfare of the people of the state and to promote the sound growth of development of our municipalities." N.Y. Gen.Mun.Law § 501 (McKinney 1974).

Urban Renewal Plans are to afford "maximum opportunity to private enterprise *consistent* with the sound needs of the municipality as a whole, for the undertaking of an urban renewal program." N.Y. Gen.Mun.Law § 505(4)(c) (McKinney 1974).

The URP provides that the land use provisions are "intended to serve as basic development controls governing redevelopment of specific sites . . . . Said provisions are not intended, however, to unduly inhibit design freedom (or) preclude redevelopment proposals based on sound principles of urban redevelopment within the scope of the Urban Renewal Plan . . ." URP § 302.

In addition, the UDC-Beacon contract expressly provides that the covenants "shall be covenants running with the land and that they shall, in any event [be] . . . *binding for* the benefit and in favor of, and enforceable by, UDC, the Urban Renewal Agency, its successors and assigns, the City and the United States . . ., *against* the Redeveloper, its successors and assigns, and every successor in interest to the Property . . . ." SURA–UDC contract, art. 4, § 2. Thus, any benefit to redevelopers emanating from the URL or URP was necessarily incidental to that of the public.

Finally, the right to exercise all the rights and remedies, and to maintain any actions or suits at law or in equity for any breach of the covenants was delegated solely to UDC and SURA. UDC-Beacon contract, art. 4, § 3. No such enforcement authority was given to Beacon or any other redeveloper.

In sum, there was no common scheme of development, Beacon was not the intended beneficiary of the covenant restricting the use of Block 100 and was not authorized to enforce that covenant. Accordingly, Beacon has no interest amounting to a property right arising from the land use covenants.

This is true, notwithstanding Beacon's contention that it made its decision to invest in Block 107 on the assumption that Block 100 would remain predominantly retail unless Beacon consented to a change from that use. Beacon maintains, such an "investment-backed expectation" amounts to a property right. In this regard, Beacon relies on *Superior Savings Association v. City of Cleveland,* 501 F.Supp. 1244 (N.D. Ohio 1980). Specifically, Beacon maintains that its "distinct investment-backed expectation" evidenced by the notice and consent provisions of the URP is similar to the interest of the mortgagee that was held protected by the Due Process Clause in *Superior Savings.*

In *Superior Savings,* the City had demolished a building without providing the mortgagee with notice of its intent to demolish. The ordinance authorizing demolition required that mortgagees receive notice before the demolition of mortgaged property. The mortgagee brought an action under Title 42, United States Code, Section 1983 against the City alleging that the demolition of the building without first providing notice to the mortgagee deprived the mortgagee of a property right secured by the Constitution. The Court agreed, stating:

> It is now well settled that the value of property and the rights protected by the Fourteenth Amendment arise not from the mere possession of the property but rather from its use. [I]t seems equally apparent that the property rights in a mortgage arise not just from the lien in land, but also in the maintenance of the security which makes the mortgage an acceptable investment for the rational investor.
>
> It seems also well established that state action which "frustrates distinct investment-backed expectations" of a property owner may form the basis for a finding of a "taking" barred by the Fifth Amendment.

501 F.Supp. at 1249 (citations omitted).

Even assuming that Beacon was entitled to notice and consent pursuant to Section 601 of the URP, Beacon's interest is clearly different from and lesser than the interest of a mortgagee.

First, a lender takes a mortgage as security for the payment of a loan covering specific property in which it invests. The mortgagee then, has a direct investment interest in that specific property. This was true of the plaintiff in *Superior Savings.*

Beacon, on the other hand, asserts an interest amounting to a property right in land in which it did not invest: property in which it had no security or direct interest.

Second, in *Superior Savings,* the court stated that "an understanding, such as a contract, may create property protected by constitutional guarantees, provided that such understandings are mutually explicit (and) . . . defined with reference to state law." *Id.* at 1248. *See also Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 447 (2d Cir.1980).

In *Superior Savings,* the notice requirement which the plaintiff relied on was specifically provided for by a local ordinance. Here, the alleged consent requirement was not defined by reference to any state law. In fact, under New York law, such a consent requirement may well be *ultra vires.*

A municipality has no power to make any agreement or deal which will in any way control or embarrass its legislative powers and duties. Neither the police power of the State itself nor that delegated by it to a municipality is subject to

limitation by private contract; nor is the exercise of such power to be alienated, surrendered or limited by any agreement or device.

Zoning of properties by a municipality, being legislative in character, cannot be bargained or sold. The rezoning of a parcel of property by a municipality based in any way upon an offer or agreement by an owner of property is inconsistent with, and disruptive of, a comprehensive zoning plan.

*Levine v. Town of Oyster Bay,* 46 Misc.2d 106, 259 N.Y.S.2d 247, 252 (Sup.Ct., Nassau Co.1964) (quoting R. Crolly and C. Norton, *Zoning by Contract with Property Owner,* N.Y.L.J., Apr. 6, 1955); *Concordia Collegiate Institute v. Miller,* 301 N.Y. 189, 93 N.E.2d 632 (1950); *Janas v. Town Board and Zoning Board of Appeals,* 51 A.D.2d 473, 382 N.Y.S.2d 394 (4th Dep't 1976).

It is clear from all of the foregoing, that Beacon has no property interest entitled to due process protection. Accordingly, defendant UDC's motion for summary judgment [1] on Beacon's Due Process claim is granted.

### V.

■ Beacon's second Title 42 United States Code, Section 1983 claim is that the actions of the defendants have failed to afford Beacon equal protection under the laws. Complaint ¶ 54. Beacon sets forth no basis for this allegation. It neither alleges what laws were unevenly applied or the manner in which it was treated differently than others similarly situated. Accordingly, Beacon equal protection claim is dismissed for failure to state a claim upon which relief can be granted.

### VI.

Third, Beacon asserts a Title 42 United States Code, Section 1983 claim for impairment of contract. Specifically, that the defendant's actions in changing the land use

objectives of the URP substantially impaired and destroyed the basis of the bargain and the contract rights of Beacon. Complaint ¶ 61.

Article 1, Section 10 of the United States Constitution, commonly known as the Contract Clause, provides that "no State shall ... pass any ... law impairing the obligation of contracts." *Id.* This clause imposes limits on the power of a municipality to abridge existing contractual relationships. *Allied Structural Steel v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). However, the Supreme Court noted that "the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising (its police power), though contracts previously entered into between individuals may thereby be affected. *Id.* at 241, 98 S.Ct. at 2720.

■ When a State impairs the obligation of its own contract, the initial inquiry concerns the ability of the State to enter into an agreement that limits its power to act in the future. If it is found that the State has such power, then it is necessary to inquire into the purpose or reasonableness of the impairment. *United States Trust Co. v. New Jersey,* 431 U.S. 1, 23, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977).

On this score, the Supreme Court has noted that, "(t)he State has the sovereign right ... to protect the ... general welfare of the people .... Once we are in this domain of the reserve power of a State we must respect the 'wide discretion on the part of the legislature in determining what is and what is not necessary.'" *El Paso v. Simmons,* 379 U.S. 497, 508–09, 85 S.Ct. 577, 583–584, 13 L.Ed.2d 446 (1964) (citations omitted). Recently, however, the Supreme Court has limited the power of states to modify rights under even those contracts for a public purpose. *See, e.g., Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978); *United States Trust Co. v. New Jersey, supra.*

---

1. Defendant UDC moved for dismissal of the complaint for failure to state a claim upon which relief can be granted. In that the Court went beyond the pleadings and all parties had an opportunity to present any pertinent material, this motion was treated as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(b).

In applying these principles to the present case, the initial inquiry is whether the government defendants had the power to give Beacon the right to veto any amendments to the URP that might "affect" its property.

■ The URL and URP were promulgated pursuant to the police power of the state. A state has no power to bargain away its police power where related to fundamental matters of the public health, safety or morals. *Home Building and Loan Association v. Blaisdell,* 290 U.S. 398, 437, 54 S.Ct. 231, 239, 78 L.Ed. 413 (1933). *Cf. United States Trust Co. v. New Jersey, supra,* 431 U.S. at 23, 97 S.Ct. at 1518. *See also, Concordia Collegiate Institute v. Miller, supra; Janas v. Town Board and Zoning Board of Appeals, supra.*

■ Thus, it may well be that such a delegation to Beacon was invalid *ab initio* because it purported to bind the state in the future with regard to its power to regulate health, safety and welfare via urban renewal.

However, even were it not so, any subsequent impairment of Beacon's alleged contract right to notice and consent was reasonable and necessary to the fulfillment of the Clinton Square Urban Renewal Project objectives. Block 100 was not successful as a retail establishment. Rather than allowing that Block to remain vacant, clearly defeating the purpose of the urban renewal, Block 100 was developed to provide another service.

Accordingly, defendant UDC is entitled to summary judgment on this claim.

### VII.

■ Beacon next alleges that the defendants' failure to adhere to the notice and consent requirement amounts to a condemnation of property without due process of law in violation of the fifth and fourteenth amendments. Complaint ¶ 63.

The fifth amendment to the United States Constitution states that, "private property (shall not) . . . be taken for public use without just compensation. *Id.*

Beacon fears that the development of Block 100 as an office complex will result in a loss of tenants and profits for Beacon in Block 107. This, Beacon asserts, amounts to a "taking" in violation of the fifth and fourteenth amendment in that Beacon was denied the opportunity to veto the changes in the URP which permitted the new owners of Block 100 to develop it as an office complex.

Beacon's attempt to equate a suspected economic loss in Block 107 with a "taking" must fail. "[D]ecisions sustaining land-use regulations, which . . . are reasonably related to the promotion of the general welfare, uniformly reject the proposition that diminution in property value, standing alone, can establish a 'taking'." *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1977) (citations omitted).

In *Woodland Market Realty Company v. City of Cleveland,* 426 F.2d 955 (6th Cir. 1970), the Court considered whether property immediately adjacent to that to be appropriated, was actually taken because of a substantial drop in value caused by an urban renewal project. The Court stated:

> The action of the City has resulted in no diminution of the plaintiff's rights in its property. Its leasehold estate has remained intact. What has altered is the character of the neighborhood, not the character of the plaintiff's leasehold interest. Actions done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use or value, do not amount to a taking of such property within the meaning of the constitutional provision that private property shall not be taken for public use without just compensation.

*Id.* at 958. Here, the defendants have not directly encroached on property owned by Beacon. Accordingly, there has been no "taking" of Beacon's property and defendant's motion for summary judgment on this claim is granted.

## VIII.

■ Beacon next alleges a cause of action under Title 42 United States Code, Section 1985. Specifically, that the public and private defendants acted willfully and in concert to deprive Beacon of property without due process of law, Complaint ¶ 69, and to violate Beacon's rights under the United States Constitution and the Laws of the United States, Complaint ¶ 70.

Title 42 United States Code, Section 1985 does not afford a right of action based upon a denial of due process rights under the fourteenth amendment. *Perrotta v. Irizarry,* 430 F.Supp. 1274 (S.D.N.Y.1977), aff'd, 573 F.2d 1294 (2d Cir.1977). Thus, Beacon's cause of action based upon due process violations are not cognizable under Section 1985.

Section 1985 addresses itself only to conspiracies to deny equal protection under the law:

> The language requiring intent to deprive *equal* protection, or *equal* privileges and immunities, means that there must be some racial or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (emphasis supplied).

Just as Beacon failed to state a colorable claim for a constitutional deprivation of equal protection, Beacon also fails to state a claim for conspiracy to violate the same. Accordingly, defendants are entitled to dismissal of this claim as well.

## IX.

■ Beacon's sixth cause of action is a state claim for breach of contract against UDC, Renaissance, Syr Mall and another not presently seeking relief from this Court. Specifically, Beacon alleges that the defendants breached that portion of the SURA–UDC contract which requires UDC, its successors and assigns, to devote the property to the uses specified in the URP as that plan may be amended from time to time. SURA–UDC contract, art. 4, § 1(a). Moreover, that Beacon, as a third-party beneficiary of that contract, has the power to seek its enforcement.

The original URP designated Block 100 as "C.B.D. Retail." Beacon maintains that if the amendments to the URP designating Block 100 "Office and Service" were in violation of the notice and consent provision of the URP, the use of Block 100 as an office complex constitutes a breach of the SURA–UDC contract.

Regardless of whether the amendments to the URP failed to conform with Section 601 of the URP, there was not a breach of the SURA–UDC contract nor is Beacon a third party beneficiary of that contract entitled to enforce it.

First, under the SURA–UDC contract, UDC is only required to devote the property to the uses specified in the URP as that plan may be amended. SURA–UDC contract, art. 4, § 1(a). Neither UDC nor subsequent redevelopers are obligated to inquire whether any amendments to the URP are proper in every respect. Thus, in that Block 100 was designated "Office and Service" beginning in 1980, development of the Atrium as an office complex does not constitute a breach of the SURA–UDC contract.

Second, even if a breach had occurred, Beacon is not entitled to seek relief from any breach of the SURA–UDC contract. Beacon is neither a party to nor a third party beneficiary of the SURA–UDC contract. "(A) third party may sue as a beneficiary on a contract made for his benefit. However, an intent to benefit the third party must be shown, and absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contract." *Port Chester Electrical Construction Corp. v. Atlas,* 40 N.Y.2d 652, 357 N.E.2d 983, 389 N.Y.S.2d 327 (1976).

As discussed with respect to Beacon's due process claim, Beacon was not the intended beneficiary of the SURA–UDC contract.

The URL, and all urban renewal plans and contracts arising therefrom, were specifically designed for the benefit of the public. N.Y.Gen.Mun.L. § 501 (McKinney 1974). The SURA–UDC contract expressly provided that the land use covenants were to be binding for the benefit, and in favor of, and enforceable by SURA, the City and the United States against UDC its successors and assigns and every successor in interest to the property. SURA–UDC contract, art. 4, § 2. Moreover, under the express terms of the contract, only SURA was given the right to maintain any actions for breach. SURA–UDC contract, art. 4, § 3.

While it is true that a third party beneficiary relationship may be implied, when, as here, a court is faced with an express provision on the subject, such an intent should not be implied. Accordingly, the defendants are entitled to summary judgment on this claim.

## X.

Beacon's seventh count, also a breach of contract claim, is that the defendants UDC, Syr Mall and Renaissance breached the UDC-Beacon contract and the contract between UDC and defendants Renaissance and Syr Mall. As with the sixth count, Beacon relies on that portion of those contracts which required the grantees to devote the property to the uses specified in the URP, as the plan may be amended.

Only those who are parties to a contract may be held liable for a breach of that contract. *New York Telephone Co. v. Teichner,* 69 Misc.2d 135, 329 N.Y.S.2d 689 (Dist.Ct.1972). Thus, Beacon is limited to proving that UDC, Syr Mall or Renaissance breached the contract between those parties, or UDC breached its contract with Beacon.

As to the first, the UDC-Syr Mall and Renaissance contract, there was no breach nor is Beacon entitled to enforce that contract. First, Syr Mall and Renaissance were only obligated to devote the property to the uses specified in the URP. When Syr Mall and Renaissance purchased Block 100 in November, 1981, that property was designated "Office and Service." Thus, their development of the Atrium as an office complex does not constitute a breach of that contract.

Second, for the same reasons that Beacon is not a beneficiary entitled to enforce the SURA–UDC contract, Beacon is not a beneficiary entitled to enforce the UDC-Syr Mall and Renaissance contract.

Likewise, there was no breach of the UDC-Beacon contract. First, UDC, as grantor, did not obligate itself to perform in any specified manner. Second, while the UDC-Beacon contract incorporated some of the terms of the SURA–UDC contract, those terms were incorporated only "to the extent that the terms and provisions thereof apply to the Property conveyed by this agreement." UDC-Beacon contract, art. 1, § 2(a)(3). Thus, Beacon's attempt to incorporate into the UDC-Beacon contract, any obligations of UDC under the SURA–UDC contract with respect to Block 100, must fail.

Accordingly, the defendants are entitled to summary judgment on this contract claim as well.

## XI.

Beacon's eighth and final cause of action is that defendants Syr Mall and Renaissance intentionally interfered with Beacon's contract with defendant UDC.

Under New York law, a claim for intentional interference with contract exists only if a plaintiff can prove (1) the existence of a valid contract; (2) that defendants had knowledge of that contract; (3) that the defendants intentionally procured the breach of that contract; and (4) that damages were suffered. *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5, 134 N.E.2d 97, 99 (1956); *Bryce v. Wilde,* 39 A.D.2d 291, 333 N.Y.S.2d 614, 616 (3d Dep't), *aff'd,* 31 N.Y.2d 882, 340 N.Y. S.2d 185, 292 N.E.2d 320 (1972). *See also, Optivision, Inc. v. Syracuse Shopping Center Association,* 472 F.Supp. 665, 684 (N.D. N.Y.1979).

Thus, an essential element of inducing a breach of contract is the breach of the contract itself. *Jack L. Inselman & Co. v. FNB Financial Company,* 41 N.Y.2d 1078, 1080, 364 N.E.2d 1119, 396 N.Y.S.2d 347, 349 (1977); *Israel v. Wood Dolson Co., supra,* 151 N.Y.S.2d at 5, 134 N.E.2d 99. Here no such breach has occurred and thus Beacon's claim for intentional interference with contract must be dismissed.

Based on all of the foregoing, it is hereby ordered that summary judgment is granted in favor of the defendant UDC on Beacon's due process, contract clause and condemnation of property claims.

It is further ordered that summary judgment is granted in favor of defendants UDC, Syr Mall and Renaissance on Beacon's state contract claims.

It is further ordered that Beacon's equal protection claim against UDC, conspiracy claim against UDC, Syr Mall and Renaissance and intentional interference with contract claim against Syr Mall and Renaissance are dismissed.