### SUPERIOR SAVINGS ASSOCIATION, Plaintiff,

v.

### CITY OF CLEVELAND, Defendant.

No. C 80–1254.

United States District Court, N. D. Ohio, E. D.

Dec. 2, 1980.

**1246**

Howard R. Turner, Turner & Melamed, Cleveland Heights, Ohio, for plaintiff.

Craig S. Miller, Asst. Director of Law, Cleveland, Ohio, for defendant.

## MEMORANDUM

BEN C. GREEN, Senior District Judge:

Plaintiff is a savings and loan institution which holds a first mortgage on land located in the City of Cleveland, Ohio. Defendant is the City of Cleveland, which, plaintiff says, demolished a building on that land without notice to plaintiff. Plaintiff complains that the actions of the city deprived it of its property interest in the land without due process, and demands damages and attorney fees.

The city has not answered, but has filed a motion for summary judgment. That motion will be considered as a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Because the motion contains exhibits not part of the pleadings, the provisions of Civ.R. 56 regarding summary judgments will apply. Plaintiff has filed a brief opposing the city's motion, and has cross–moved for summary judgment.

This Court has jurisdiction to hear and decide this case pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343.

The facts are not in dispute. In July, 1977, plaintiff made a $12,000 loan to one George Hughes (who is not a party to this action), and secured the note resulting from the loan with a first mortgage on land and buildings located at 6802 Superior Avenue, Cleveland. Constructed on the land at the time was a two story brick apartment building. The first mortgage was filed for record with the Cuyahoga County Recorder.

On October 19, 1979, the defendant, acting through its Department of Community Development, Division of Housing, inspected the subject premises and found 27 matters which were considered violations of the city's building and housing ordinances. A notice listing the violations was sent to Hughes, apparently by certified mail. The notice provided that "This notice shall be complied with and all violations corrected by November 30, 1979." Typed in capital letters at the beginning of the itemization of the violations were the words: "THIS STRUCTURE SHALL BE DEMOLISHED AND ALL DEBRIS REMOVED FROM THE PREMISES OR THE VIOLATION SET OUT BELOW SHALL BE CORRECTED."

The notice also contains a reference that a copy thereof was to be sent to "Oper. Demo." Plaintiff did not receive a copy of the notice.

On December 14, 1979, the City's Division of Building inspected the structure, through Building Inspector John Capko and Registered Civil Engineer William L. Blankenburg. Photographs were taken at the time of the inspection and copies thereof were submitted as exhibits to the City's motion. Blankenburg's report, written that day and included as one of the exhibits, describes what is obvious from the photographs:

> The building was open, vacant, and partly vandalized. The building was only partly vandalized because the brick scavengers got there ahead of those looking for copper, and other metals. About forty feet of brick bearing wall was removed for a height of two stories on the east side of the building. At the rear where the building juts out to the east, another 15 feet of a two–story brick bearing wall was removed from a north wall. Then at the rear, another 22 feet of a brick wall two stories high had been removed at the east wall. This last item, (22 feet) was

non–bearing as far as floor joists go, but it did carry parapet brick above the roof level. In every case where brick had been removed, the brick parapet was left in a dangerous condition. A heavy wind or a substantial snow load could bring down quite a bit of the building where floor or roof joists have no bearing wall to rest on.

Blankenburg concluded:

In my opinion this building is beyond the point of economical repair. Furthermore, it is an attractive menace to the neighborhood children, and it should be torn down immediately.

In his affidavit, Inspector John Capko says that during his inspection he found a group of small children playing in and around the structure. In his handwritten report, made the day of the inspection, Capko writes:

Comments: This structure should be razed forthwith, ... (I was informed that housing has this in demo. 12–79[)].

The city asserts in its brief that on "December 18, 19[79], the City's independent contractor ... was authorized to demolish the subject property ..." The building was subsequently demolished.

From all of the above, the Court concludes that the building in question was in a manifestly deteriorated and dangerous condition from at least October 19, 1979 through the date of its demolition. The Court also concludes that the city seriously considered demolishing the building from that date onward. But at no time during that two and a half month period did the city notify the plaintiff of its intentions to raze the structure, even after the inspection of December 14 made apparent the course the city would take.

The Fourteenth Amendment to the United States Constitution reads, in pertinent part:

... nor shall any State deprive any person of ... property without due process of law; ...

Under circumstances such as those presented here, communities have been held liable to landowners for destruction of buildings without either notice or opportunity for a hearing. *Miles v. District of Columbia*, 510 F.2d 188 (C.A.D.C., 1975). But the nature of the interests held by a mortgagor–landowner differs from those held by his mortgagee, and it has not been suggested that the interests of the mortgagor are subrogated to the mortgagee. Therefore, it will be necessary to examine the nature of the mortgagee's interests and determine to what extent constitutional protection should attach thereto.

In *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555 at 594–95, 55 S.Ct. 854 at 865–866, 79 L.Ed. 1593 (1934), Justice Brandeis listed five property rights in a mortgage on real property which could not be taken from the mortgagee by Congress absent the due process required by the Fifth Amendment. Those attributes were set forth as follows:

1. The right to retain the lien until the indebtedness secured is paid;

2. The right to realize upon the security by a judicial public sale;

3. The right to determine when such sale shall be held, subject only to the discretion of the court;

4. The right to protect its interest in the property by bidding at such sale wherever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

In *W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56 at 59, 55 S.Ct. 555 at 556, 79 L.Ed. 1298 (1934), Justice Cardozo found unconstitutional a portion of a farmer's relief act, saying of Congress:

With studied indifference to the interests of mortgagee or to his appropriate pro-

tection they have taken from the mortgage the quality of an acceptable investment for a rational investor.

And in *Wright v. Mountain Trust Bank*, 300 U.S. 440 at 457, 57 S.Ct. 556 at 559, 81 L.Ed. 736 (1937), the Court held that a federal statute violated the Fifth Amendment Due Process Clause,

since it effected a substantial impairment of the mortgagee's security.

█ These concepts--that a mortgage confers upon the mortgagee certain specific rights of security for a debt as well as the right not to have the security impaired--remain valid today.

In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–2709, 33 L.Ed.2d 548 (1972), the Supreme Court held that:

The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests–property interests–may take many forms.

\*　　\*　　\*　　\*　　\*　　\*

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

In *Paul v. Davis*, 424 U.S. 693, 710–711, 96 S.Ct. 1155, 1164–1165, 47 L.Ed.2d 405 (1976), Justice Rhenquist further defined what interests may attain the status of "property" protected by the Fourteenth Amendment:

It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning

of either "liberty" or "property" as meant in the Due Process Clause. These interests attain the Constitutional status by virture of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that procedural guarantees of the Fourteenth Amendment apply wherever the State seeks to remove or *significantly alter* that protected status. (emphasis added).

█ The law of Ohio recognizes and protects the status of mortgages, mortgagors, and mortgagees.[1] It is further recognized that an understanding, such as a contract, may create property protected by constitutional guarantees, provided that such understandings are mutually explicit, must be such that a person claiming the interest may invoke at a hearing, and must be defined with reference to state law. *Webster v. Redmond*, 599 F.2d 793 (C.A.7, 1979). A mortgage on real property such as the one in this case fits such criteria.

█ This Court thus concludes that the principles set forth in *Radford, Worthen,* and *Wright* have as much force today as when they were established. No state may deprive a mortgagee of the rights set forth in *Radford* without due process. A state may not, unless via due process, substantially impair the security of a mortgage by taking from it the quality of an acceptable investment for a rational investor.

Having determined that a mortgage contains property protectable by the Fourteenth Amendment, it now must be determined whether the demolition of a building located on land deprives a mortgagee of any of those interests.

█ It is now well established that the value of property and the rights protected by the Fourteenth Amendment arise not from the mere possession of the property but rather from its use. *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d

[1]. Much of Chapters 5301 and 5302, Ohio Revised Code, deal with the creation, alteration, and cancellation of mortgage interests. Foreclosure and remedies for default on mortgages, although primarily equitable in nature, *see*

*Wayne Building and Loan v. Yarborough*, 11 Ohio St.2d 195, 228 N.E.2d 841, have received statutory recognition. *See*, section 2323.07, Ohio Revised Code.

401 (1979). From the cases discussed above, it seems equally apparent that the property rights in a mortgage arise not just from the lien in land, but also in the maintenance of the security which makes the mortgage an acceptable investment for the rational investor.

■ It seems also well established that state action which "frustrates distinct investment–backed expectations" of a property owner may form the basis for a finding of a "taking" barred by the Fifth Amendment. *Penn Central Transportation Corp. v. New York City*, 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed.2d 631 (1978), citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922).

It is apparent from the language of the mortgage deed, a copy of which was made an exhibit by plaintiff, that plaintiff took pains to take as security for its loan not just the land at 6802 Superior Avenue, but any buildings on that land as well. Plaintiff had a distinct investment–backed expectation at the time the loan was made that the apartment building on the land would remain, so as to provide security for the debt and to provide a source of funds from which the loan could be repaid.

When the defendant city caused the destruction of the building, it irrevocably foreclosed the possibility that plaintiff's protected expectations arising from the building could be realized. The city therefore deprived plaintiff of some or all of its property interest in the mortgage.

Our inquiry does not end here, as not all deprivations of property interests by a state give rise to a finding of a constitutional violation. To give rise to such a finding, the deprivation must be the result of the denial of due process. It is the task now to assess the measure of protection due to plaintiff, and determine whether the city met its burden. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Vruno v. Schwarzwalder*, 600 F.2d 124 (C.A.8, 1979); *Colm v. Vance*, 567 F.2d 1125 (C.A.D.C., 1977).

■ It has been held that when emergency conditions exist, a state may take action which deprives a person of a property interest without hearing or notice provided there is a special need for very prompt action. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). It has also been held that when faced with conditions extremely dangerous to health and safety, a municipality may, pursuant to its police power, demolish a building summarily and without notice. *Miles v. District of Columbia*, 510 F.2d 188, 192 (C.A.D.C., 1975). But where a community allows an appreciable amount of time to elapse between an inspection and demolition, the actions of the city themselves demonstrate that the exigency does not exist. *Miles v. District of Columbia, supra; cf. Pioneer Savings and Loan Co. v. City of Cleveland*, 479 F.2d 595 (C.A.6, 1973). Under such circumstances– where the city has allowed several days to elapse between identification of the problem and its resolution by demolition–it cannot claim emergency as the reason for dispensing with notice and opportunity for a hearing.

It will not be necessary to determine here, however, whether the condition of the building at 6802 Superior Avenue justified demolition without notice as an exercise of the police power.

■ An administrative agency is bound to observe its own regulations, and denies due process if it does not. *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). "Statutory authority is as much a requirement for valid [administrative action] as is constitutional reasonableness." *Wilson v. Health and Hospital Corp. of Marion County*, 620 F.2d 1201, 1217 (C.A.7, 1980).

The city was required by its own ordinances to provide notice to plaintiff of its intent to demolish the building. Section 3103.08(f) of the codified ordinances of the city reads, in pertinent part:

The Commissioner [of Building] shall . . . give written notice informing the owner or agent, *mortgagee of record,* and lien

holders of record of the City's intention to demolish and remove the unsafe building or structure, at least 30 days prior to such intended action by the City. However, in cases of emergency as set forth in subsection (g) hereof, less than 30 days' notice may be given. (emphasis added).

The referenced subsection (g) authorizes the "prompt" demolition of buildings which in the opinion of the Building Commissioner present an "immediate" danger to the health and safety of others. Even though such prompt action is taken because of the emergent nature of the danger, *some* notice is required by the ordinance to be given to mortgagees of record.

▄▄▄▄ When plaintiff filed the mortgage on 6804 Superior Avenue for record, it thereby gave notice to the City of Cleveland and the whole world of its interest in the land and the buildings thereon. When the city failed to observe its own ordinances and did not give plaintiff notice of its intent to demolish the building, it denied plaintiff the due process of law. Since the denial of due process deprived plaintiff of a property interest protected by the Due Process Clause of the Fourteenth Amendment, the defendant city is liable to plaintiff for the damages caused.

In *Pioneer Savings and Loan Co. v. City of Cleveland*, 479 F.2d 595, 598 (C.A.6, 1975), a case involving circumstances similar to those here, the Sixth Circuit held:

> The City was guilty of violating the [plaintiff's] constitutional right to due process of law, under the Fourteenth Amendment, and is liable to [plaintiff] in the amount due and owing on its mortgage and note, including principal and accrued interest.

Three years later, however, the Supreme Court ruled, in *Carey v. Piphus*, 435 U.S. 247, 254–255, 98 S.Ct. 1042, 1047–1048, 55 L.Ed.2d 252 (1978):

> Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to partic-

ular interests, and their contours are shaped by the interests they protect.

Our legal system's concept of damages reflects this view of legal rights. "The cardinal principle of damages in Anglo–American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." 2 F. Harper and F. James, Law of Torts, § 25.1, p. 1299 (1956) (emphasis in original).

▄▄▄▄ It therefore appears that any award of damages in procedural due process cases must (1) be tailored to the interests protected by the right in question, and (2) be limited to the injury actually caused to those interests by the constitutionally tortious conduct. The damages formula set forth in *Pioneer Savings and Loan Co. v. City of Cleveland, supra*, does not reflect this standard for damages; rather it presumes that the loss to the mortgagee is the value of the mortgage. The *Pioneer Savings'* formula does not take into account any (1) loss in the security of the mortgage which may have taken place pursuant to the acts or omissions of the mortgagor-landowner or others, or (2) the residual value of the parcel (and the resulting value in the mortgage) after the demolition of the building and removal of debris.

▄▄▄▄ It is axiomatic that the purpose of monetary damages is, to the extent that the payment of money can do it, to place the damaged party in the same position he would have been in had the wrongful act not occurred. *See* 22 Am.Jur.2d, *Damages*, § 12, n. 11, and cases cited therein. Where compensation and not punishment is the function, the law will not put him in a better position than he would be in had the wrong not been done. *See id.*, at § 13 and cases cited therein. "[T]he law . . . remains true to the principle that substantial damages should be awarded only to compensate actual injury . . ." *Carey v. Piphus, supra*, 435 U.S. at 266, 98 S.Ct. at 1054.

▄▄▄▄ It thus appears to the court that the proper measure of damages in this case would be the difference in value of plain-

tiff's mortgage just prior to the demolition of the building, and the value of that mortgage just after the structure was razed. The precise assessment of those damages is not possible on the present record. Further actions by the parties will be required to identify the standard by which that worth may be measured, and, through application of the standard through the fact–finding process, the measure of the loss.

An order will be entered granting partial summary judgment for plaintiff and against defendant on the issue of liability, reserving for later ruling the issues of the measure and amount of damages.