**CHALKER** et al.

v.

**HOWLAND TOWNSHIP BOARD OF TRUSTEES** et al.

Court of Common Pleas of Ohio,
Trumbull County.

No. 89 CV 0976.

Decided May 26, 1995.

6

8

*Frank R. Bodor,* for plaintiffs.

*Charles L. Richards,* for defendants.

**10**

Joseph R. Kainrad, Judge.

This matter is before the court upon motions for reconsideration filed by both parties. The court has reviewed the pleadings and its prior order in this case and has decided to reconsider its prior decision.

Pending before the court for reconsideration are defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment. This decision will supplant the decision on summary judgment previously rendered by the court.

## I. FACTS AND ISSUES PRESENTED

The undisputed facts are as follows. On June 27, 1987, defendant Howland Township Board of Trustees ("Trustees") met in session regarding the property located at 806 Henn Hyde Road, N.E., Howland Township, Trumbull County, Ohio. Before them were three letters about the conditions existing at the property.

One letter, dated June 17, 1987, was from the Township Fire Chief, co-defendant George D. Brown ("Fire Chief"), informing the Trustees that a dead body had been found in the residence located on the property just five days before, and conditions at the premises were such as for him to "question the life [and] safety of our residents and firefighters." He had inspected the property that same day accompanied by two county health department officials and the Township Zoning Inspector. He related the conditions he found at the residence and garage, including unsecured doors, broken windows, makeshift and unsafe steps into the residence, very old spoiled food, combustible debris scattered throughout the residence, mattresses on the floor, four to five feet of water in the basement, a collapsing front porch, and weeds three feet high. He recommended that the structure be brought to safe standards or destroyed and recommended that the Trustees destroy the house.

Another letter, dated June 18, 1987, came from a county health department official who had accompanied the Fire Chief in his inspection of the premises. He concluded that the residence was in poor condition, evidenced structural damage, and concluded that "the basement poses both a health and safety hazard to neighboring residence" and "the house is unfit for human habitation."

The last letter, dated June 22, 1987, was from the Township Zoning Inspector, co-defendant Gordon McLean ("Zoning Inspector"), detailing his inspection of the property with the Fire Chief and county health department officials and relating the history of zoning violations, its vacancy since before 1982, and neighborhood complaints, and concluding that the structures were insecure. He reminded the

Trustees that in the previous year, 1986, the township had pumped water from the flooded basement and cut weeds in the front yard. He recommended that the Trustees "take such action as necessary to eliminate the hazardous condition permanently."

In session, the Trustees unanimously enacted two resolutions, pursuant to R.C. 505.86 and 505.87. The first authorized the Zoning Inspector to enforce the "removal, repair, and/or secure the condition[s]" at the home and garage, after giving the owner, plaintiff Leonard J. Chalker ("Chalker"), notice of the resolution by other than certified mail and seven days to remedy the conditions.

The second resolution authorized the Zoning Inspector to give Chalker and any lien holders of record seven days' notice by certified mail "of the Township's intention to abate, control or remove the nuisance" if the overgrown vegetation was not removed in seven days, and the costs incurred would be assessed against such property.

Both resolutions provided Chalker with seven days to remedy the problems. Neither the resolutions nor the notice offered Chalker a hearing prior to the enforcement action's being taken by the township.

That same day Chalker personally received written notice of the resolutions. The notice stated that an emergency existed and detailed the violations found on the property. It gave Chalker seven days to remedy the conditions or the township would enter upon his property and take "necessary action to remedy the condition immediately" and charge the cost to Chalker's real estate taxes. The notice did not say what specific remedial action would be taken. Chalker was directed to immediately contact the Zoning Inspector.

Plaintiff Margaret Chalker ("Mrs. Chalker"), who claims a mortgage interest in the property, lived in the same residence as Chalker. Although the notice was delivered to her house, she was neither provided with a copy of the notice nor told of its delivery by Chalker. She later received oral notice over the telephone.

On July 14, 1987, some seventeen days after the resolutions were adopted, the Zoning Inspector and Fire Chief met Chalker at the Howland Township building, and discussed the action that the township was going to take if the conditions were not immediately corrected. Later that evening, township officials, including the Zoning Inspector and employees under the Fire Chief, who was also present, set fire to the buildings, destroying both them and their contents.

Plaintiffs brought claims for trespass, wrongful demolition, negligence (both "gross" and malicious), violation of rights secured by the Ohio Constitution, and violation of rights secured by the United States Constitution and the civil rights statute, Section 1983, Title 42, U.S.Code. All parties have moved for summary judgment and have attached affidavits supporting their respective positions.

**12**

After extensive re-review of the pleadings, affidavits, and depositions, it appears to the court that this case boils down to five issues: (1) whether R.C. 505.86 and 505.87 are constitutional and lawfully applied here; (2) if so, whether the Trustees were justified in enacting the resolutions as emergencies which allowed the notices to be given within a shortened time; (3) whether the emergency presented to the Trustees was such as to preclude plaintiffs' being offered a hearing before the property was destroyed; (4) whether the enforcement action taken—burning the buildings and their contents—was reasonably justified under the circumstances; and (5) whether plaintiffs demonstrated evidence of bad faith, malice, recklessness on the part of township officials.

If the Trustees were justified in determining that an emergency precluded giving plaintiffs a thirty-day statutory notice and an opportunity for hearing, and if their actions in burning the buildings were reasonably necessary under all the circumstances to protect the public health and safety, plaintiffs have no claim against any defendant.

If, however, the Trustees were not justified in any of the three respects— emergency for notice, emergency precluding hearing, and reasonableness of destroying the buildings—plaintiffs may maintain claims against defendants. It is these last considerations which will require the court to fully re-explore the relevant law in light of the facts presented.

## II. STANDARD FOR SUMMARY JUDGMENT

As set out in the prior ruling of this court, at this stage of the proceedings, the granting of judgment is proper only when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. However, nonmoving parties cannot rest on their pleadings, but must produce some credible evidence on those issues upon which they bear the burden of proof at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, at paragraph three of the syllabus.

## III. APPLICABLE LAW AND ANALYSIS OF FACTS

The court reconfirms its prior holding that R.C. 505.86 and 505.87 are lawful exercises of legislative authority under both the United States and Ohio Constitutions. Similar statutes in the municipal context have been upheld as constitutional. This case presents no issue which would compel a different result.

Having decided that the statutes are constitutional, they must, however, be enforced in a manner consistent with the procedures provided in the statute and applied in a constitutional manner. *Jackson v. Columbus* (1974), 41 Ohio App.2d 90, 70 O.O.2d 92, 322 N.E.2d 283, at paragraph two of the syllabus.

### A. Statutes Allowing Removal of Nuisances

R.C. 505.86(B) provides, in pertinent part, as follows:

"A board of township trustees may provide for the removal, repair, or securance of buildings or other structures in the township that have been declared insecure, unsafe, or structurally defective by any fire department under contract with the township or by the county building department or other authority responsible under Chapter 3781. of the Revised Code for the enforcement of building regulations or the performance of building inspections in the township, or buildings or other structures that have been declared unfit for human habitation by the board of health of the general health district of which the township is a part.

"*At least thirty days prior to the removal,* repair, or securance of any insecure, unsafe, or structurally defective building, *the board [of] township trustees shall give notice by certified mail of its intention with respect to such removal,* repair, or securance *to the holders of legal or equitable liens of record upon the real property on which such building is located and to owners of record of such property.* If the owner's address is unknown and cannot reasonably be obtained, it is sufficient to publish the notice once in a newspaper of general circulation in the township. * * * *If an emergency exists, as determined by the board, notice may be given other than by certified mail and less than thirty days prior to such removal,* repair, or securance." (Emphasis added.)

### (1) Procedure in Implementing Statute

Initially, the statute requires three things of the Trustees:

1. That the subject structures be declared insecure, unsafe, or structurally defective by an appropriate official or office;

2. That removal, repair, or securing of the structures is an appropriate remedy; and

3. That notice be given to the property owners and record lienholders.

█ It is undisputed that the Trustees enacted a resolution declaring Chalker's property insecure, unsafe, or structurally defective based upon the personal inspection of the Fire Chief, Zoning Inspector, and county health officials. The Fire Chief, Zoning Inspector, and health department officials all determined that the property was a major nuisance, unsecured, unsafe, a threat to the public

health and safety, and unfit for human habitation. Further, it is apparent that the Trustees' determination, at least to some extent, was justified, as Chalker himself, however belatedly, attempted to correct the obvious problems evident at the property.

The Trustees, in the exercise of their discretion, determined and resolved that the residence and garage should be removed, repaired, or secured. Reasonable minds could not conclude that the Trustees' determination in this regard was unreasonable based upon the facts as they knew them.

It is equally apparent that Chalker was notified personally of the proposed action by delivery of the notice to his home. Mrs. Chalker was not made aware, however, because Chalker himself intercepted the notice delivered to their home and kept it from his mother. Plaintiffs admit that she was later informed by telephone of the actions to be taken approximately four or five hours before the structures were razed by fire.

In enacting the resolutions the Trustees followed the statute and complied with its requirements.

(2) Determination of Emergency for Purposes of Shortened Notice Period

■ In shortening the notice period, the Trustees determined that a real emergency directly affecting the health and safety of the residents existed at the property. Based upon the evidence presented to them, including the dead body found in the abandoned residence five days before, the deplorable conditions existing in the structures, the collapsing porch, the lack of structural integrity in the buildings, the unsecured entry points into the structures, and the overgrown weeds, reasonable minds could not conclude that the Trustees had abused their discretion in declaring an emergency on June 17, 1987.

That being decided, their determination to give plaintiffs less than thirty days' notice and provide such notice other than by certified mail was factually justified and permitted by statute.

As stated above, Chalker was given personal notice of the resolutions that same day—actual notice, not just certified mail notice. As to notice, he cannot complain. As to the weeds, the notice allowed the seven days specified in R.C. 505.87. As to the structures, due to the emergency determined by the Trustees, Chalker's receipt of actual notice seven days before the stated deadline and about seventeen days before any action was taken was proper notice under the statute.

■ Mrs. Chalker, the lienholder, claims she received only oral notice (a telephone call) just hours before the buildings were razed by fire. The depositions raise questions, however, as to whether she was given verbal notice before that time. More important, however, Chalker admitted that he intercepted the

notice brought to their home and hid this matter from her. Chalker and his mother should not benefit from his purposeful wrongdoing. Therefore, this court concludes that reasonable notice was provided to Mrs. Chalker consistent with her interest in the property by delivery of the notice to her home, which is substantial compliance with the Trustees' responsibilities under the statutes.

### (3) Emergency and Opportunity for Hearing

As stated above, before a structure may be razed under the statute, the owner must be given an opportunity for a hearing and possible judicial review. *Jackson, supra.* However, it is beyond fair debate that in the event a bona fide emergency to the public health or safety exists, it is not necessary to conduct a hearing before taking action. However, the burden of proving that such an emergency exists is on the political subdivision.

The factual issues involved in determining whether a sufficient emergency exists which would preclude the opportunity for hearing are different from those involved in the similar determination of shortening the time for notice. The interests to be protected are very different as well.

Not surprisingly, the testimony of the parties during depositions characterize the conditions existing at the property very differently. Certainly nuisance conditions existed, but whether the conditions were such as to justify the specific means of abatement chosen, or precluded an opportunity for hearing are disputed factual questions. The seventeen days it took from enacting the resolution to actually taking the abatement action is also relevant in determining whether a bona fide emergency made a hearing infeasible.

### B. Claims for Relief Under State Law

The court will now evaluate each of plaintiffs' claims for relief in order to determine if they pass muster under the summary judgment standard set forth above.

A beginning point for any evaluation of tort liability of a political subdivision must necessarily involve an analysis of R.C. Chapter 2744 ("the Act"), which delineates liabilities and immunities conferred upon Ohio's political subdivisions, including townships. R.C. 2744.01(F). The Act provides immunity from liability for most actions of a township and its officials. In this regard, R.C. 2744.02(A)(1) provides, in pertinent part, as follows:

"[A] political subdivision is not liable in damages in a civil action for injury * * * or loss to * * * property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental * * * function."

R.C. 2744.01(C)(1) of the Act defines "governmental functions" as follows:

" 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

" * * *

"(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons * * *.

"(2) A 'governmental function' includes, but is not limited to, the following:

" * * *

"(i) The enforcement or nonperformance of any law;

" * * *

"(p) The provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, [and] fire * * * codes, and the taking of actions in connection with those types of codes * * *."

R.C. 2744.03(A) provides for specific immunities and defenses, as follows:

"In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * *

"(2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

" * * *

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or section 3746.24 of the

Revised Code, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

" * * *

"(7) The political subdivision * * * is entitled to any defense or immunity available at common law or established by the Revised Code."

As set out above, immunity from suit is afforded a political subdivision when its officials are performing governmental functions. Further, the elected and appointed officials and employees of a township are similarly immune to suit. The officials' immunities, however, do not stretch to cover acts that are taken "with malicious purpose, in bad faith, or in a wanton and reckless manner." R.C. 2744.03(A)(6)(b). Therefore, to the extent that competent evidence is presented that any of the Township's officials' acts were malicious, in bad faith, or wanton and reckless, immunity does not afford that official protection from civil liability.

Finally, this Act does not limit liability for "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States." R.C. 2744.09(E).

█ In addition to the immunities provided by the Act, R.C. 2744.03(A)(7) makes clear that other immunities under common law were not abolished. This includes certain qualified immunities for public officials for decisions taken in "good faith." Qualified immunity provides that, absent bad faith or corrupt motive, public officials acting within the scope of their authority are not individually liable for their failure to properly perform a duty involving judgment or discretion. *Scot Lad Foods v. Secy. of State* (1981), 66 Ohio St.2d 1, 20 O.O.3d 1, 418 N.E.2d 1368. This doctrine survived the later abrogation of sovereign immunity by the Ohio Supreme Court. *Enghauser Mfg. Co. v. Eriksson Eng. Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228. Here, plaintiffs must show bad faith, malice, or corrupt motive on the part of township officials in order to continue their suit against them as individuals. *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 365, 15 OBR 480, 484-485, 474 N.E.2d 303, 308.

Unlike the immunities under common law, prior liabilities under common law were abolished by the Act, effectively abrogating the findings in cases such as *Solly v. Toledo* (1966), 7 Ohio St.2d 16, 36 O.O.2d 9, 218 N.E.2d 463, cited by plaintiffs.

### (1) Trespass

Plaintiffs claim that defendants trespassed on their property. In order to make out a claim for trespass, plaintiffs must first show that each of them has a possessory interest in the property, and that the offending party entered this property without consent or proper authorization or authority. Privilege, of course, is a defense to an action in trespass. 88 Ohio Jurisprudence 3d (1989) 581, Trespass, Section 2.

It appears from the pleadings that Mrs. Chalker is not pursuing a claim for trespass because, as a mortgage holder, she does not have a right to bring such a claim. Chalker, on the other hand, owns the property in fee and possesses a right to exclude others.

### (a) Fire Chief

On June 17 and July 10 and 17, 1987, the Fire Chief entered Chalker's property. His affidavit attached to defendants' motion for summary judgment confirms that he was on the property in solely an official capacity inspecting for safety and fire hazards and violations, and plaintiffs have shown no evidence to the contrary. A township fire chief has a right under R.C. Chapters 3781 and 3791 to go upon property for purposes of such inspection. To the extent that Chalker claims that the Fire Chief trespassed when he inspected the property on the above dates, such claims are barred by the privilege afforded him as the township's chief enforcement officer under the statutes.

So too, Chalker has shown no evidence to suggest that such entries were for personal, as opposed to official, reasons. Further, plaintiff offered no evidence of any malicious purpose, bad faith, or wanton or reckless conduct for the Fire Chief's presence on the premises. Thus, his claim of trespass for entries for inspections occurring June 17 and July 10 and 17, 1987, must fail, both in official and personal capacities, pursuant to the immunity afforded inspectors under R.C. 2744.03(A)(6)(b).

On July 17, 1987, however, the Fire Chief went upon Chalker's property not solely for inspection, but to implement the Trustee's resolutions entailing removal, repair, or securing the buildings and cutting the weeds. The township resolutions by direct implication required the presence of the Fire Chief in order to avoid spread of any fire used in abating the nuisance. His presence, then, justifiably served the interests of public safety so readily apparent when a structure is burned. To this extent, the Fire Chief, in addition to immunity, was privileged due to public necessity to be present on July 17, 1987. However, to the extent that he and the firefighters that he directed were involved in the actual razing of the structures by fire, Chalker has a cause of action against the Fire Chief under his other claims, but not trespass.

### (b) Zoning Inspector

 The Zoning Inspector's liability is like that of the Fire Chief. On June 17 and July 10 and 17, 1987, the Zoning Inspector also went upon Chalker's property. His affidavit confirms that he was on the property in solely an official capacity inspecting for zoning violations, and plaintiffs' have shown no evidence to the contrary. A township zoning inspector is granted a statutory privilege to go upon property in order to inspect it for zoning violations. R.C. 519.16. To the extent that Chalker claims that the Zoning Inspector trespassed when he inspected the property on those above dates, such claims are barred by the privilege afforded him under the statute.

Additionally, Chalker has shown no evidence to suggest that such entries were for personal, as opposed to official, reasons, or were done in bad faith. Thus, his claim of trespass against the Zoning Inspector for entries for inspecting occurring June 17 and July 10 and 17, 1987, must fail, both in the Zoning Inspector's official and personal capacities, pursuant to the immunity afforded by R.C. 2744.03(A)(6)(b).

 On July 17, 1987, however, the Zoning Inspector went upon Chalker's property not solely for inspection, but to implement the Trustees' resolutions entailing removal, repair, or securing the buildings and cutting the weeds. The township resolutions clearly authorized the Zoning Inspector's presence on the premises for the purpose of abating a nuisance, a power the Trustees unquestionably possess under statute. As the only evidence presented shows that the Zoning Inspector was present to abate the nuisance under the resolutions, his presence on the property was privileged, and no cause of action for trespass may be maintained against him.

### (c) Township Trustees

The Trustees' liability must be analyzed somewhat differently. Unlike zoning inspectors, the statutes do not confer a specific privilege upon township trustees to go upon another's property. However, they are afforded immunity under R.C. 2744.03(A)(6) so long as they are acting in the scope of their official responsibilities and in good faith.

In their affidavits Trustees John D. Emanuel ("Emanuel") and Fred Alberini ("Alberini") maintained that they were never on plaintiffs' property. Plaintiffs did not offer any contrary evidence. For this reason also, plaintiffs' claims of trespass must fail against Emanuel and Alberini.

 Trustee Richard E. Orwig ("Orwig") did go upon Chalker's property. In his affidavit, however, he asserts that he acted solely in his official capacity as a township trustee, and had no personal interest in the property, and never took

custody or control over any of Chalker's personal property. These facts are not disputed by other evidence offered by plaintiffs. As Orwig was acting in an official capacity and without bad faith, Chalker's claims of trespass against Orwig must fail.

## (2) Negligence

The facts alleged in plaintiffs' claims and brought out in deposition do not really constitute a claim for negligence, but are better characterized as intentional or wrongful conduct, such as trespass discussed above, or wrongful demolition, discussed below. Plaintiffs are not truly alleging that defendants failed to use ordinary care in razing the structures by fire, but that such conduct was illegal or done maliciously, not negligently.

Regardless, to the extent that negligence is claimed against defendants, the demolition of the structures to abate a nuisance is clearly a governmental function for which immunity is conferred upon the township by R.C. 2744.02(A)(1). *Broadview Mtge. Co. v. Cleveland* (Mar. 18, 1993), Cuyahoga App. No. 61939, unreported, 1993 WL 76884. Additionally, the township is afforded immunity from the acts of its officials which involve "discretion of the employee with respect to * * * enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." R.C. 2744.03(A)(3). The selection of the means of abatement involves a substantial exercise of discretion on the part of those charged with enforcement, and so immunity is afforded for such acts.

As explained above, township officials have immunity for acts taken within the scope of their official responsibilities, and not done "with a malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(6). Negligence, or even gross negligence, does not necessarily involve or require proof of that kind of conduct, and therefore immunity is afforded officials for merely negligent conduct of governmental functions.

Summary judgment, then, is appropriate on plaintiffs' claims of negligence.

## (3) Wrongful Demolition and Taking of Property

It is apparent that abatement of a nuisance through demolition of an abandoned residence is a governmental function. As the court stated in *Broadview Mtge. Co., supra*, when referring to *Cleveland v. Wescon Constr. Corp.* (Aug. 23, 1990), Cuyahoga App. No 57405, unreported, 1990 WL 121301:

" 'R.C. [Chapter] 2744 creates immunity for [the city] [here the township] from liability for injury or loses incurred by the exercise of its governmental function. In this instance [plaintiffs'] stated cause of action arose out of the city's

performance of its governmental functions: to wit: enforcement of the City Building Codes regarding the abatement of an alleged nuisance caused by a building or structure which was injurious to or menace to the public health, safety, or welfare.'"

The township then is immune to suit for the demolition of plaintiffs' property to abate a nuisance.

However, R.C. 2744.03(A)(6)(b) provides no immunity to township officials if their conduct was done "with malicious purpose, in bad faith, or in a wanton or reckless manner."

 Plaintiffs claim that township officials were reckless and wanton in selecting demolition and destruction of their personal property as the means of abatement of the nuisance presented by the abandoned residence and garage. Chalker claims that simply boarding up the buildings would have secured them sufficiently. The defendants present substantial evidence that the structures were not reasonably repairable and nothing but total removal would ameliorate the deplorable conditions and preserve the public health and safety. Simply put, the evidence presents issues of fact as to whether the remedy effected, razing the buildings and their contents by fire, was reasonable and justified in light of the existing condition of the structures and the premises, or was a reckless and wanton act on the part of the officials involved.

Although township officials are granted authority to remove structures under the statute, selection of the means of abatement must not be reckless and wanton. Although it is apparent that township officials exhibited no personal animus toward plaintiffs, proof of wanton or reckless conduct does not necessarily entail personal motives.

It is apparent that the township's officials were acting within the scope of their officials responsibilities, so the only issue is whether their acts were done wantonly or recklessly. For this plaintiffs bear the burden of proof at trial. *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 117, 554 N.E.2d 1301, 1306. Plaintiffs have presented some evidence upon which reasonable minds could come to different conclusions on this issue. Therefore, the granting of summary judgment on plaintiffs' claims against township officials for wrongful demolition or "taking" of the structures and personal property is inappropriate under the facts presented.

### (4) Claims arising under Ohio Constitution

Plaintiffs' complaint includes claims for relief pursuant to Sections 1, 14, and 19, Article I of the Ohio Constitution. Plaintiffs, however, cite no case law which allows alleged violations of these sections of the Ohio Constitution to serve as a

basis for a cause of action. The Ohio Supreme Court has repeatedly held that the protections offered under the Ohio Constitution are not self-executing. See, *e.g., Scot Lad Foods, supra; Provens v. Stark Cty. Bd. of MRDD* (May 13, 1991), Stark App. No. CA–8269, unreported, 1991 WL 87188. Absent precedent in this regard, this court will not infer that such causes of action exist. However, the substance of plaintiffs' claims may be pursued as claimed under their other causes of action.

### (5) Claims for Costs of Removal

In this claim plaintiffs demand judgment for the costs of demolition which the township allegedly certified to Chalker's taxes. R.C. 505.86(C) confers upon the Trustees a right to recoup expenses incurred in exercising powers under the statute and a method for collection, as follows:

"A board may collect the total cost of removing, repairing, or securing buildings or other structures that have been declared insecure, unsafe, structurally defective, or unfit for human habitation, or of making emergency corrections of hazardous conditions, by either of the following methods:

"(1) The board may have the clerk of the township certify the total costs, together with a proper description of the lands to the county auditor who shall place the costs upon the tax duplicate. The costs are a lien upon such lands from and after the date of entry. The costs shall be collected as other taxes and returned to the township general fund.

"(2) The board may commence a civil action to recover the total costs from the owner."

The resolutions provide for recovery of the township's costs. Clearly, if removal of the structures were justified, the costs incurred by the township may be recouped by charging such costs to Chalker's taxes. However, defendants provided an affidavit that the township has not actually exercised its right to tax the costs to the county auditor or recover costs through a civil action. Plaintiffs do not respond with any contrary evidence.

If plaintiffs' claim here was to declare the costs improper and unenforceable or to enjoin the township from recovering these costs, such claims would be ripe for decision. However, plaintiffs' complaint demands monetary recovery for costs that have not yet been charged, and therefore summary judgment for defendants is appropriate on this claim.

### C. Claims for Relief Under Federal Law

As stated above, the immunities afforded townships under R.C. Chapter 2744 do not limit claims under federal law. R.C. 2744.09(E). Federal immunities and

liabilities are largely determined by case law, rather than statute, so a brief review of the cases is needed.

Plaintiffs' claims under federal law are brought pursuant to the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, which protect rights to be secure in houses and personal effects, and prohibit being deprived of property without due process of law, and the civil rights statute, Section 1983, Title 42, U.S.Code. These claims essentially allege the township's taking of plaintiffs' property without due process of law. As constitutional claims and civil rights claims are analyzed similarly, all federal claims will be discussed together.

### (1) Elements of a Claim under the Civil Rights Statute

In order to prevail on a claim under Section 1983, Title 42, U.S.Code, plaintiffs must show that:

1. The defendants' conduct was committed by a person acting under color of state law; and

2. That this conduct deprived plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. See *Parratt v. Taylor* (1981), 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420, 428.

■ First, abuse or misuse of state law by state or local officials is actionable under the statute, as it is considered "state action." *Monroe v. Pape* (1961), 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. But, in order to state a claim here, such abuse of state law must result in a violation of "rights, privileges, or immunities secured by the Constitution or laws of the United States."

■ Second, in order to maintain an actionable claim, the conduct complained of must be deliberate and intentional. *Estelle v. Gamble* (1976), 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251. Thus, claims of mere negligence on the part of public officials are not actionable, as such conduct does not transgress a federal protected right. See *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662; *Kalk v. Woodmere* (1985), 27 Ohio App.3d 145, 27 OBR 177, 500 N.E.2d 384.

Finally, federal law grants plaintiffs a right to be secure in their property and possessions, which is embodied in the Fifth Amendment to the United States Constitution, and to be deprived of such property only with due process of law, as set out in the Fourteenth Amendment to the United States Constitution. *Bancplus Mgte. Corp. v. Cleveland* (June 9, 1994), Cuyahoga App. No. 65011, unreported, 1994 WL 258644.

### (2) Proof Offered of Plaintiffs' Claims

Here, plaintiffs allege that township officials were exercising the authority conferred upon them by R.C. 505.86 and 505.87. This defendants admit. There is no genuine issue of fact that defendants were acting under color of state law. So the first element of plaintiffs' claim has been shown.

Further, defendants' actions were deliberate and intentional. Of this there can not be reasonable debate. Razing Chalker's abandoned residence and garage in order to abate a nuisance was specifically intended.

As stated above, although neither R.C. 505.86 nor 505.87 provides for a hearing, due process is still required. The right to hearing, therefore, is inferred. To this extent the court reconfirms its prior decision that, except where a bona fide emergency exists, a right to hearing is an inferred condition in constitutionally implementing the statute. Here, it is apparent that plaintiffs had no opportunity for hearing. The sole issue, then, is whether the admitted deprivation of plaintiffs' property was properly done under federal due process standards or excused by the manifest necessities of the moment.

### (3) Sufficiency of Post–Deprivation Hearing

In opposing the right to hearing, defendants principally argue that a post-deprivation hearing is sufficient, citing *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 550 N.E.2d 456, and *Superior Sav. Assn. v. Cleveland* (N.D.Ohio 1980), 501 F.Supp. 1244. Although this court does not disagree with that proposition in the appropriate case, and further agrees with the result reached in the cases cited in support of that proposition, here the facts as alleged are somewhat different.

■ Chalker's interest is not simply the "economic interest" referred to in *1946 St. Clair Corp., supra,* but his right to hold property free from governmental intrusion and confiscation. The United States Supreme Court has determined that where a substantive property right is implicated, such property cannot be taken "except pursuant to constitutionally adequate procedures." See *Loudermill v. Cleveland Bd. of Edn.* (1987), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. This includes a right to at least minimal due process before the deprivation occurs. *Fuentes v. Shevin* (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556. Therefore, the opportunity for a post-deprivation hearing alone is no bar to Chalker's claim that the township's taking of his property without a pre-deprivation hearing violated his right to due process of law. Absent exigent circumstances, at least some minimal due process was called for before razing Chalker's structures.

■ Mrs. Chalker's claims, on the other hand, arise solely from her status as a mortgage holder, which is an economic interest in the property, rather than a personal interest. In order to proceed with her federal claims, she must show that the available state remedies are inadequate. *1946 St. Clair Corp., supra.* This she has not done. Therefore, her claims are not actionable under the cited federal laws, and summary judgment should be granted to the defendants on her federal claims.

### (4) Emergency Exception to Right of Hearing

■ There is an emergency exception to the right to hearing before property can be taken by a governmental body. If a bona fide emergency exists, property can be demolished by a governmental body without prior notice or hearing. *Fuentes, supra,* 407 U.S. at 82, 92 S.Ct. at 1995, 32 L.Ed.2d at 571. Absent an emergency, however, notice as required by the statute and an opportunity for a hearing are necessary steps in destroying or taking one's property.

The critical factor in all the cases cited by defendants which dispense with a hearing is that a *real emergency existed* that effectively precluded notice and hearing before the buildings were destroyed. To the extent that an emergency actually exists, a governmental body should not be impeded from taking quick action to protect the health and safety of persons and property. In such an instance a post-deprivation hearing is all a claimant has a right to and all that he can reasonably expect. If, however, the existence of an emergency is not established, a post-deprivation hearing does not satisfy due process for the taking of a personal right.

Whether there is an actual emergency depends on the facts. Whether to declare an emergency entails a high degree of discretion. The decisionmakers, the Trustees, have been afforded this discretionary power by statute to invoke such an emergency for protection of the public health and safety. This decision is reviewable only upon an abuse-of-discretion standard. In order to determine if such an abuse occurred in the present case, it is incumbent upon the Trustees to show that their decision was based upon articulable facts known to them at the time which would fairly indicate that an emergency existed.

To the extent that a bona fide emergency existed, a hearing prior to razing Chalker's structures was not required, and a post-deprivation hearing was appropriate.

### (5) Defenses of Trustees and Officials

The Trustees claim that their action in passing the resolutions was "legislative," and therefore they and the township should be afforded absolute legislative immunity. *Tenney v. Brandhove* (1951), 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; *Enghauser, supra.* Acts of township trustees, while even done through the

**26**

vehicle of "resolutions," can be, when directed at a single person or property, administrative. *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500; *Haskell v. Washington Twp.* (C.A.6, 1988), 864 F.2d 1266, 1278.

■ Here, the Trustees were not acting in a legislative capacity, as they would be in enacting laws of general applicability such as a comprehensive zoning code, but were directing the enforcement of laws and policies against only plaintiffs. This is an administrative act for which absolute legislative immunity is not available. Qualified or "good faith" immunity is available in this circumstance. *Haskell, supra,* at 1278.

■ Qualified immunity under federal law is afforded public officials where the acts complained of were within the scope of their official duties and were taken with the objective, reasonable belief that they were lawful. *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410–411. To be denied immunity because of unlawfulness, such must be apparent. *Anderson v. Creighton* (1987), 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531. But importantly, such immunity is not afforded to those who act in bad faith or in reckless disregard of the rights of injured parties. *Haskell, supra.* Unlike state law, federal immunity is determined based upon the objective reasonableness of the official's actions in light of clearly established law. *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410–411.

■ It is hard to argue, as defendants must, that the Trustees should be afforded qualified immunity here, because they could not have reasonably known that burning Chalker's residence and garage to the ground without a hearing violated his clearly established rights secured under federal law, or, in the alternative, that a right to be secure in one's home and possessions was not clearly established. Upon the evidence presented, reasonable minds could differ as to whether qualified immunity should be granted the Trustees under these facts, precluding judgment for either party on this issue.

Further, the evidence here is disputed as to whether an actual emergency existed which would necessitate the destruction of the buildings before a hearing could be held by the Trustees. As this critical factor is still at issue, summary judgment is inappropriate.

Finally, a question of fact is present as to whether the Trustees acted in good faith when they determined that razing Chalker's residence by fire—without a prior hearing—was objectively reasonable under all the circumstances. This question precludes summary judgment for defendants on these claims.

### (6) Liability of Township

■ A political subdivision cannot be held liable on a theory of respondeat superior for violations of the civil right statutes by its employees. *Monell v.*

*Dept. of Social Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Thus, the township is liable only if the alleged violations by its officials were based upon a township custom or policy. *Jett v. Dallas Indep. School Dist.* (1989), 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598. Under the facts presented here, the township as an entity is fully implicated. Its policymakers, the Trustees, specifically ordered the demolition and thereby subjected the township to potential liability.

Further, the township, being a political subdivision, is not afforded the qualified immunity enjoyed by the Trustees. *Owen v. Independence* (1980), 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673. But, on the other hand, punitive damages are not recoverable from a political subdivision. *Newport v. Fact Concerts, Inc.* (1981), 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616. Therefore, the township may be liable for compensatory damages and attorney fees, but not for punitive damages.

Again, defendants may take quick and necessary action where a bona fide emergency exists, and use whatever means of abating the nuisance or danger that are reasonable under the circumstances. Here, questions of fact are present as to whether a bona fide emergency existed and whether the destruction of the buildings was necessary to completely abate the nuisance or danger. Summary judgment cannot therefore, be granted to the township on Chalker's claims.

### (7) Defendants' Procedural Defenses

In their defense to the federal claims, defendants assert that plaintiffs either have no claims under federal law or such claims have not been properly brought. This court does not agree. Unlike the plaintiff in *Bram v. Cleveland* (1993), 97 Ohio App.3d 718, 647 N.E.2d 523, appeal denied, 71 Ohio St.3d 1218, 645 N.E.2d 732, who raised constitutional claims in only a vague way, or the plaintiffs in *Wescon Constr. Corp., supra,* and *Broadview Mtge. Co., supra,* who raised them not at all in their complaints, plaintiffs here have specifically identified the provisions of federal law which allegedly have been violated by defendants and detailed sufficient facts in their complaint to put defendants on notice of such claims.

Which brings us to defendants' second general assertion, that plaintiffs' pleadings are not sufficient to state a cause of action under federal law. For this proposition defendants rely principally upon *Kennedy v. Cleveland* (C.A.6, 1986), 797 F.2d 297, and similar cases. Suffice it to say that *Kennedy* involves a *procedural rule* for the federal courts first established in *Mitchell v. Forsyth* (1985), 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411. This rule is not a substantive rule of law applicable to all similar federal causes of action brought in

state courts, but a procedural rule which has been adopted to guide procedure in federal courts only. This procedural requirement has been specifically rejected by courts in this state, see, *e.g.*, *Ohio Civ. Serv. Emp. Assn. v. Moritz* (1987), 39 Ohio App.3d 132, 529 N.E.2d 1290, and will not be adopted here.

## IV. Conclusion

Upon review of the pleadings, depositions, and affidavits filed herein, and construing the evidence most strongly in favor of the party opposing such motion, the court finds that there exits genuine issues of material fact affecting those issues raised in plaintiffs' motion for partial summary judgment, and that plaintiffs are, therefore, not entitled to judgment as a matter of law on their motion for partial summary judgment.

Upon the same review of defendants' motion, the court finds that as to plaintiffs' claims against all defendants for trespass and negligence, all claims arising directly under the Ohio Constitution, claims for costs of abatement, and Mrs. Chalker's claims under federal law, plaintiffs have not presented evidence creating a genuine issue of material fact supporting these claims, and defendants are therefore entitled to judgment on those claims. On plaintiffs' claims against the township for wrongful demolition and taking of personal property, and punitive damages, no genuine issue of material fact supporting these claims is in evidence here, and therefore the township is entitled to judgment on those claims as a matter of law. The rest of plaintiffs' claims, however, including wrongful demolition and taking of personal property and federal claims against the township officials, and federal claims against the township, involve genuine issues of material fact, and defendants are not entitled to judgment as a matter of law on those portions of their motion for summary judgment.

IT IS THEREFORE ORDERED that the parties' motions for reconsideration be and hereby are granted, and the court will completely reconsider its prior ruling.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment be and hereby is granted, in part, and denied, in part, as set forth above.

The Clerk is directed to serve upon all parties notice of this judgment and its date of entry upon the journal in accordance with Civ.R. 58(B).

SO ORDERED.

*Judgment accordingly.*

JOSEPH R. KAINRAD, J., of the Portage County Court of Common Pleas, sitting by assignment.